IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| RICO JENNINGS WADDELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-951-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| DEPUTY JAMES, DEPUTY NEELY and | ) | |
| MULTNOMAH COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

Rico Jennings Waddell
4419 NE 131st C-9
Portland, OR 97230

    Pro Se Plaintiff

Agnes Sowle
Scott Erik Ashaug
501 S. E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214

    Attorneys for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Before the court is Defendants' Motion for Summary Judgment (#25). For the reasons below, I grant the motion.

**FACTS**

Rico Waddell was incarcerated following revocation of his probation. On December 6, 2003, Waddell was housed in Unit 6D in the Multnomah County Detention Center. Cell searches were done in Unit 6D while the inmates were at recreation. Deputy Magnuson found contraband in Waddell's cell. Waddell argued with Deputy Magnuson after Waddell learned that he was being written up for possession of contraband. Deputy Magnuson ordered Waddell to cell in and then called Sergeant Gorton to assist with a disciplinary move of Waddell from 6D to Unit 5B/C.

Sergeant Gorton sent Deputy Neely and Deputy James to assist. Deputy James previously had difficulty moving Waddell to a disciplinary unit and had to order him into a handcuffing position multiple times before Waddell complied. Deputy James considered Waddell's behavior to be variable. At times, Waddell was quiet and at other times he could be argumentative and threatening.

When Waddell was ordered to cell in, he knew that he was going to be taken to "the hole." He admits to feeling "pissed off," upset, irate, and out of control. As the deputies approached the cell, Deputy James heard Waddell say something defiant about being moved. The two deputies entered the cell. Deputy James was holding the handcuffs by the chain in his right hand with the semicircular cuff parts sticking out from either side of his hand. He

positioned himself about two or three feet from Waddell, directly in front of him. Waddell's cellmate lay on his bunk, as ordered by a deputy.

Deputy James instructed Waddell to turn around so he could be handcuffed. Waddell did not turn around, complained about going to "the hole," and started pulling his arms away from Deputy James. Deputy James repeated the order three more times but Waddell still did not comply. Deputy James saw that Waddell was becoming more agitated, similar to how he reacted in the previous incident between the two. Deputy James saw Waddell change his body position and body language to a defensive position. He believed that Waddell was about to assault him.

Deputy James ordered Waddell a fourth time to turn around. Waddell raised his hands and arms. Deputy James reacted by striking Waddell's left shoulder with his right forearm, pushing him back into the wall. Waddell raised his fist and broke his arm free from Deputy Neely's hold. Waddell tried to punch and kick at Deputy James and Deputy Neely. The two deputies tried to control Waddell, who fell on top of Deputy James and continued to kick and punch. Deputy Neely was also on the ground, struggling to control Waddell's legs. To get out from underneath, Deputy James delivered two blows to Waddell's upper shoulders and back of his head. Deputy James got out from under Waddell and positioned himself on top of Waddell's back. Waddell continued to resist and tried to break free.

Deputy James drew his pepper spray and instructed the other deputies to clear from the area. He sprayed Waddell in the face, causing him to stop fighting. The pepper spray also contaminated Deputy James' eyes. Waddell was cuffed and taken to the medical unit on the fourth floor by Sergeant Gorton and Deputy Perkins. Deputy James also went there to wash the spray from his eyes. Deputy Neely stayed in the housing unit to assist Deputy Magnuson with

escorting Waddell's cellmate to a visitation room so that the cell could be cleaned of pepper spray residue.

While in the medical unit, Waddell cursed at Deputy James, who ignored him. Waddell then spit at Deputy James, with the spit hitting the deputy in the forehead. Deputy James tried to use his open right hand to turn Waddell's head. Waddell spit again and kicked Deputy James. Sergeant Gorton pulled Waddell to the ground and subdued him.

Medical staff examined Waddell. He had a small bump on his left forehead with a superficial abrasion on it. Waddell declined the health staff's offer for an over-the-counter analgesic. Two hours later, Waddell's neurological and physical status were again evaluated. Waddell remained stable. On December 16, 2003, Dr. Bane saw Waddell, who stated that he had mostly recovered from his injuries but still had back spasms. Dr. Bane observed Waddell walk easily without acute distress. Dr. Bane conducted additional tests but found no evidence of any significant back injury. Multnomah County Corrections Health provided all necessary medical care for Waddell, who has not reimbursed the County for these health care costs.

Waddell's account does not differ in any significant way. He states that he was struck on the forehead and back of the head with handcuffs and a fist by Deputy James, that he was thrown to the floor by Deputy James and Deputy Neely, that Deputy Neely jumped on his back, and that he was thoroughly sprayed with pepper spray. In the medical unit, Waddell states that Deputy James told him "fuck you" and struck him in the mouth, causing a busted lip, bruises, and a loose tooth. Then he was thrown to the floor again and Deputy James jumped on him, injuring Waddell's back.

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Based on Waddell's Amended Complaint and my Order of November 17, 2004 reviewing its sufficiency, Waddell alleges claims against Deputy James and Deputy Neely for a violation of the Eighth Amendment's prohibition of cruel and unusual punishment and for assault and battery under the state common law. All claims against Multnomah County were previously dismissed.

In determining what evidence can be used in deciding this motion, I have relied on Waddell's Amended Complaint, which he verified. A verified complaint, or a verified motion, may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (complaint); Johnson v. Metlzer, 134 F.3d 1393, 1399 (9th Cir.) (motion), cert. denied, 525 U.S. 840 (1998). I cannot rely on the statements Waddell made in his Support of Plaintiff's Response to Defendants' Motion for Summary Judgment because he did not put in any language verifying the document.

Page 5 - OPINION AND ORDER

I.  Cruel and Unusual Punishment

Waddell contends that he was subjected to cruel and unusual punishment when Deputy James and Deputy Neely responded to Waddell's refusal to cell in.

"'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 5, 112 S. Ct. 995 (1992) (quoting Whitley v. Albers, 475 U.S. 312 (1986)).  When prison officials are accused of using excessive physical force to quell a prison disturbance in violation of the Cruel and Unusual Punishments Clause, "the core judicial inquiry is that set out in Whitley:  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7.  Five factors are considered in determining if the use of force was wanton and unnecessary:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing Hudson).

The absence of serious injury is relevant to the Eighth Amendment inquiry but does not end it.  Hudson, 503 U.S. at 7.  The prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. at 9-10 (internal quotation omitted).

Waddell's injuries were not extensive.  He suffered a small bump on his forehead, a few small cuts and bruises, a loose tooth, back spasms that lasted for a few weeks but required no

treatment and did not affect his ability to walk, and the immediate effects of pepper spray. I viewed the photographs filed by Waddell, even though they were unauthenticated, and can only see very minor cuts and bruises.

There was a need for the deputies to apply force. Waddell was verbally complaining and refusing to comply with a repeated order to turn around for handcuffing. The deputies did not use any force until Waddell raised his arms, signifying the possibility that he was about to attack them. The need for force continued as Waddell struggled with both deputies on the floor. The deputies did not escalate the force by using pepper spray until Waddell continued to fight with both of them. Although a face full of pepper spray would be extremely unpleasant, there is no evidence that the ill effects last more than a few minutes. Turning to the fourth factor, Deputy James had an earlier altercation with Waddell and Waddell was displaying the same characteristics. Thus, the deputy's perception of a threat was reasonable, especially in light of Waddell's refusal to allow handcuffing after repeated requests. The parties do not give much detail about efforts to temper the severity of the forceful response. I do note that the force stopped when Waddell quieted down after being pepper sprayed and did not restart until another altercation broke out in the medical unit. Waddell does not deny spitting on Deputy James prior to the renewed use of force.

I would not characterize the use of force against Waddell as de minimis. Based on the analysis of the factors, however, I conclude that there is no factual issue raised that the use of force against Waddell was not a good-faith effort to restore discipline or was a malicious and sadistic attempt to harm him. Consequently, I conclude that defendants did not violate the Eighth Amendment and grant summary judgment against the claim.

II. Assault and Battery

Oregon passed a series of statutes entitled Actions Against Public Body by Inmates. Noneconomic damages "may not be awarded to an inmate in an action against a public body unless the inmate has established that the inmate suffered economic damages." ORS 30.650. Because this claim is based on Oregon common law, the statute is an appropriate one to apply.

Waddell has not established a factual issue that he suffered economic damages. In particular, Multnomah County Corrections Health provided his medical care and he has not reimbursed the County for his health care costs. Thus, the statute bars the economic damages Waddell seeks for the assault and battery claim. Accordingly, I grant summary judgment and dismiss the assault and battery claim.

**CONCLUSION**

Defendants' Motion for Summary Judgment (#25) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this ___3rd___ day of October, 2005.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge